[Cite as *State v. Barker*, 2014-Ohio-3245.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130214 |
| | | TRIAL NO. B-1107595-C |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| TYSHAWN BARKER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 25, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Sheryl A. Trzaska*, Assistant State Public Defender, Office of the Ohio Public Defender, for Defendant-Appellant.

**DEWINE, Judge.**

{¶1}   Fifteen-year-old Tyshawn Barker was convicted of two aggravated murders and other related offenses.  In this appeal, he contends that he should not have been bound over to the common pleas court from the juvenile court, argues that statements he made to police should have been suppressed and maintains that his counsel was ineffective.  We are not persuaded, and affirm the judgment below.

## A Mistaken Identity and Two Murders

{¶2}   On October 14, 2011, Tyshawn, Dequantez Nixson, Brendan Washington and Carrielle Conn went to an apartment building intending to shoot Samuel Jeffries.  Mr. Jeffries was targeted because he had filed domestic-violence charges against Dequantez's mother.  Dequantez and Tyshawn waited in the hallway while Brendan and Carrielle knocked on the apartment door.  But instead of Mr. Jeffries, Rudell Englemon answered the door.  Carrielle shot Mr. Englemon who later died from his wounds.  After the shooting, the group fled the apartment.

{¶3}   It didn't take the boys long to turn on their accomplice, Carrielle.  According to Tyshawn, Dequantez grew concerned because Carrielle had told Mr. Jeffries about the youths' involvement.  Fearing that Carrielle would snitch to the police, Dequantez lured her into the woods with the other two boys.  They told Carrielle that they were going to "hit a lick"—or, in other words, commit a robbery.  But rather than commit a robbery, the three boys shot Carrielle several times.  She suffered multiple gunshot wounds to her face and head and one to her back.  Brendan fired the initial shots at Carrielle, and Dequantez and Tyshawn each fired an additional shot.  They left her body on a set of abandoned railroad tracks.  The body was discovered after a citizen called 911 to report having heard shots and then seeing three teenage boys laughing and walking along the tracks.

{¶4}    Dequantez's mother, who was at the apartment where Mr. Englemon was shot, identified Carrielle as one of the individuals involved in Mr. Englemon's shooting.  Although his mother denied his involvement in the shooting, Dequantez was brought in for questioning.  At that time, police officers discovered that Dequantez had a cellular phone that had belonged to Carrielle.  Upon questioning, Dequantez admitted to his involvement in both shootings, and told police officers that Tyshawn and Brendan were also involved.

### The Proceedings Below

{¶5}    Tyshawn was arrested as a juvenile for charges of murder and aggravated murder.   Following a hearing during which the juvenile court found that there was probable cause to believe Tyshawn had committed the crimes, the court conducted a bindover hearing to determine whether it would retain jurisdiction over the case or transfer jurisdiction to the common pleas court.  A report assessing Tyshawn's amenability to rehabilitation in the juvenile system was prepared by Dr. Paul Deardorff and presented during the hearing.  At the conclusion of the hearing, the juvenile court ordered that Tyshawn be bound over to the common pleas court.

{¶6}    The Hamilton County Grand Jury indicted Tyshawn for the aggravated murder of both victims, with firearm and witness specifications, as well as conspiracy, aggravated robbery and tampering with evidence.   Tyshawn moved to suppress statements that he made during a police interview following Carrielle's shooting.  He argued that he had not voluntarily, knowingly and intelligently waived his *Miranda* rights.  The trial court denied the motion to suppress.  Tyshawn entered a no-contest plea to the charges against him and was sentenced accordingly.

### Transfer of Jurisdiction to the Common Pleas Court

{¶7}    Tyshawn contends that the juvenile court abused its discretion in transferring jurisdiction over the case to adult court.  Because Tyshawn was 15 years old at the time of the offenses, transfer of the case to common pleas court was

3

discretionary. R.C. 2152.12(B). R.C. 2152.12(D) delineates factors in favor of transfer for the court to consider, and R.C. 2152.12(E) lists factors that militate against transfer for the court to consider.

{¶8}     Here, the court stated that it considered the factors and articulated its findings with respect to several, including the use of a firearm in both offenses, that the second offense was done to silence a potential witness, and Tyshawn's age and mental capacity. The court concluded that the juvenile system was not equipped to rehabilitate Tyshawn within the available time period and that the safety of the community may require adult sanctions. The court's decision was not an abuse of discretion. The assignment of error is overruled.

### Waiver of *Miranda* Rights

{¶9}     In a supplemental assignment of error, Tyshawn asserts that the trial court erred when it denied his motion to suppress statements made during his interview with police officers.

{¶10}   A day after Carrielle's murder, Tyshawn was taken into custody and questioned by Detectives Kurt Ballman and Terry McGuffey. Before asking about the shootings, Detective Ballman read Tyshawn his *Miranda* rights and asked if he understood his rights. Tyshawn stated that he understood the rights and signed the form acknowledging that he had been informed of his rights. Tyshawn now argues that he did not voluntarily, knowingly and intelligently waive his *Miranda* rights.

{¶11}   In our review of the denial of Tyshawn's motion to suppress, we defer to the trial court's factual findings, but review de novo the court's application of the law to those facts. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶12}   Whether a defendant has voluntarily, knowingly and intelligently waived his *Miranda* rights may be inferred from the totality of the circumstances. *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, 853 N.E.2d 279, ¶ 9, citing *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988), and *State v. Gapen*, 104 Ohio St.3d 358,

2004-Ohio-6548, 819 N.E.2d 1047. Where, as here, the interrogation of the defendant is recorded electronically, the statements made are presumed to have been made voluntarily. R.C. 2933.81. As Tyshawn asserts, he had no choice but to answer the detectives' questions because he was told by Detective Ballman that the officers were "going to get some information from [him]." We conclude that this statement by Detective Ballman, made before the detective asked for the spelling of Tyshawn's name, his birthdate, address and telephone number, did not act to coerce Tyshawn into making a statement. Nothing in the record refutes the presumption that Tyshawn's statements were made voluntarily.

{¶13} Tyshawn contends that the detectives should have ensured that he substantively understood his rights, particularly because Tyshawn was a low-functioning, 15-year-old child with a third-grade reading level and no prior experience with police interrogation. "[A]n individual's low intellect does not necessarily render him * * * incapable of waiving *Miranda* rights." *State v. Lynn*, 7th Dist. Belmont No. 11 BE 18, 2011-Ohio-6404, ¶ 14. "Rather, the suspect's intelligence must be considered in light of the interrogation's other circumstances, including the suspect's own conduct and representations during the interrogation." *State v. Kirk*, 3d Dist. Crawford No. 3-12-09, 2013-Ohio-1941, ¶ 30. A review of the recording of the interview demonstrates that Tyshawn had a calm demeanor, understood the questions posed to him and was able to answer coherently. Tyshawn's conduct and representations to the detectives during the interrogation indicate nothing other than a knowing waiver of his *Miranda* rights. Based on our review of the recording, we conclude that the trial court's finding that Tyshawn had voluntarily, knowingly and intelligently waived his *Miranda* rights was supported by the record. The court properly denied the motion to suppress. The supplemental assignment of error is overruled.

**Counsel Was Not Ineffective**

{¶14}   Tyshawn asserts that he was deprived of the effective assistance of counsel based upon his trial counsel's performance during the bindover hearing and during the hearing on the motion to suppress.  To succeed on this claim, Tyshawn must show that his counsel's performance was deficient, and that, absent his counsel's errors, the result of the proceedings would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).  Tyshawn has not made such a showing.

{¶15}   Tyshawn maintains that his trial counsel was ineffective during the bindover hearing because he did not present case law and scientific studies that addressed the developmental differences between adolescents and adults.  But at issue in the hearing was not whether there is a difference in the mental development of adolescents and adults.  The issue was whether, based on the factors listed in R.C. 2152.12(D) and (E), Tyshawn was amenable to rehabilitation in the juvenile system.  Tyshawn's attorney tailored his argument to the specific case at hand, emphasizing Tyshawn's low intelligence, his limited participation in the offenses, and the lack of services that he had received to date during earlier contacts with the juvenile court system.

{¶16}   Tyshawn also suggests that his attorney should have called Dr. Deardorff as a witness to question him about his amenability evaluation, retained an independent psychologist to evaluate Tyshawn, and educated the court about the programs that were available to Tyshawn in the juvenile system.  Missing from Tyshawn's suggestions is any indication that Dr. Deardorff's testimony or an independent evaluation would have led to a different result in the proceedings.  Dr. Deardorff's report clearly laid out Tyshawn's limited mental capacity and intelligence.  Further, there is no indication that the juvenile court was ignorant

about the services offered by the juvenile justice system. We will not second guess an attorney's strategic trial decisions. *See State v. Treesh*, 90 Ohio St.3d 460, 490, 2001-Ohio-4, 739 N.E.2d 749. We conclude that Tyshawn has not demonstrated that his attorney's performance was deficient with respect to the amenability hearing.

{¶17} Likewise, we conclude that Tyshawn's counsel was not ineffective during the motion-to-suppress hearing. Tyshawn contends that the result of the hearing would have been different had counsel presented evidence of Tyshawn's limited intelligence and reading comprehension because the evidence would have indicated that he could not have voluntarily, knowingly and intelligently waived his *Miranda* rights. Further, Tyshawn argues that counsel should have had him evaluated regarding his understanding of the rights form. Having reviewed the record, including the recording of the interview, we are unable to conclude that such evidence would have changed the result of the motion-to-suppress hearing. The court was able to review the recording that was made of the interview and determine whether Tyshawn voluntarily, knowingly and intelligently waived his *Miranda* rights. The assignment of error is overruled.

{¶18} We therefore affirm the judgment of the trial court.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **HENDON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.