[Cite as *State v. Barker*, 2016-Ohio-7059.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130214 |
| | | TRIAL NO. B-1107595-C |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| TYSHAWN BARKER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 30, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brooke M. Burns*, Chief Counsel, Juvenile Department, Office of the Ohio Public Defender, and *Charlyn Bohland*, Assistant State Public Defender, for Defendant-Appellant.

**DEWINE, Judge.**

{¶1}    This is a case that returns to us on remand from the Ohio Supreme Court.  At issue is a murder confession made by a 15-year-old.  In the earlier proceeding, we found that the teenager had voluntarily, knowingly and intelligently waived his *Miranda* rights and that his confession was voluntary.  In doing so, we referenced an Ohio statute, R.C. 2933.81(B), which creates a presumption that electronically recorded statements by suspects of certain crimes are voluntary.  The Supreme Court found the statute unconstitutional as applied to juveniles and sent the case back to us to consider the *Miranda* waiver and the voluntariness of the confession without the benefit of the presumption.

{¶2}    After reviewing the record, we conclude that the state met its burden to demonstrate that Barker had knowingly, intelligently and voluntarily waived his *Miranda* rights and that his statements were voluntary.  We therefore affirm the judgment of the trial court.

## I.  Background

{¶3}    We set forth the details of the offenses in our earlier decision.  *See State v. Barker*, 1st Dist. Hamilton No. C-130214, 2014-Ohio-3245 ("*Barker I*").  Briefly, Mr. Barker, Dequantez Nixson, Brendan Washington and Carrielle Conn went to an apartment intending to kill one man but murdered a different man who had the bad luck to answer the door.  Ms. Conn was the shooter in the first murder.  Worried that Conn might snitch, her three companions lured her into the woods and killed her two days later.

{¶4}    The next day, around midnight, Detectives Kurt Ballman and Terry McGuffey brought Barker into the police station for questioning.  After being read his

*Miranda* rights, Mr. Barker admitted to participating in both murders, including shooting Conn in the back. In a second, briefer interview the next day, Mr. Barker identified a photograph of Washington. Mr. Barker was charged with two counts of aggravated murder as well as other related offenses.

{¶5} The juvenile court held a bindover hearing. Following the hearing, the court ordered that Barker's case be transferred to adult court. In the common pleas court, Mr. Barker filed a motion to suppress his statements to the detectives, arguing that he had not voluntarily, knowingly and intelligently waived his *Miranda* rights and that he had not given his statements voluntarily. Recordings of the interviews were admitted into evidence at the hearing on the motion. In addition, Detective Ballman testified that he had read Barker his *Miranda* rights before questioning him and that Barker appeared to have understood his rights. The court denied Barker's motion. Mr. Barker subsequently pled no contest to two counts of aggravated murder for each victim, two counts of aggravated robbery and three counts of tampering with evidence, all with specifications. The court found him guilty and sentenced him accordingly.

## II. Barker's First Appeal

{¶6} In his first appeal, Mr. Barker challenged the juvenile court's decision to transfer jurisdiction to the adult court. In a supplemental assignment of error, he asserted that the trial court also erred when it denied his motion to suppress. We affirmed the court's judgment.

{¶7} In deciding that the trial court properly denied Barker's motion to suppress, we referenced the presumption found in R.C. 2933.81(B). Under that statute, statements made by a person suspected of aggravated murder "are presumed to be voluntary if the statements * * * are electronically recorded." R.C. 2933.81(B). Examining the totality of the circumstances, we concluded that "nothing in the record

3

refutes the presumption that [Barker's] statements were made voluntarily." *Barker I* at ¶ 12. We also concluded that Barker had voluntarily, knowingly and intelligently waived his *Miranda* rights.

{¶8} The Ohio Supreme Court reversed our judgment. *State v. Barker*, __ Ohio St.3d ___, 2016-Ohio-2708, __ N.E.3d __ ("*Barker II*"). It held that the statutory presumption in R.C. 2933.81(B) was unconstitutional as applied to juveniles and that the statute does not affect the analysis of whether a defendant voluntarily, knowingly and intelligently has waived his *Miranda* rights. *Id.* at ¶ 44. Thus, the court remanded the case so that we could consider Barker's supplemental assignment of error "without the R.C. 2933.81(B) presumption and with the understanding that the burden rested squarely on the state to demonstrate both that Barker knowingly, intelligently and voluntarily waived his *Miranda* rights and that his statements to the police were voluntary." *Id.*

### III. Barker Waived His *Miranda* Rights Voluntarily, Knowingly and Intelligently

{¶9} In *Miranda*, the United States Supreme Court determined that, due to the coercion inherent in custodial police interrogation, certain procedural safeguards were necessary as prophylactic measures "to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* After he is advised of his rights, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id.*

4

{¶10} Before it may use statements elicited during custodial questioning, the state has the burden to prove that a defendant was informed of and waived his rights voluntarily, knowingly and intelligently. *Id.* at 475. *See State v. Edwards*, 49 Ohio St.2d 31, 38, 358 N.E.2d 1051 (1976). The waiver of one's *Miranda* rights need not be express. Rather, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Berghuis v. Thompkins*, 560 U.S. 370, 385, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010). Whether a defendant has waived his *Miranda* rights voluntarily, knowingly and intelligently is to be evaluated under the totality of the circumstances. *Fare v. Michael C.*, 442 U.S. 707, 724-725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

{¶11} Since *Miranda*, courts have been vexed by questions about the application of its framework to juveniles. *See, e.g., Little v. Arkansas*, 435 U.S. 957, 98 S.Ct. 1590, 55 L.Ed.2d 80 (1978) (J. Marshall, dissenting from court's denial of certiorari and arguing that the court should review whether before a juvenile waives her *Miranda* rights, she "is entitled to competent advice from an adult*")*; *J.D.B. v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011) (determining that a child's age informed the determination of whether he was in custody for purposes of a *Miranda* review). Indeed, the Ohio Supreme Court's decision below is indicative of the unease courts have felt when confronted with custodial confessions obtained from juveniles.

{¶12} Despite concerns about juvenile confessions, the United States Supreme Court has rejected the notion that special rules need be established for police interrogation of juveniles:

> This totality-of-the-circumstances approach is adequate to determine
> whether there has been a waiver even where interrogation of juveniles is

involved. We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so. The totality approach permits—indeed it mandates—inquiry into all the circumstances surrounding the interrogation. This included evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Fare* at 725 (concluding that a juvenile's request to have his probation officer present during questioning did not amount to an invocation of his Fifth Amendment rights).

{¶13} Similarly, the Ohio Supreme Court has declined to require that a juvenile's parent or guardian also be informed of and waive the child's rights. *See In re Watson*, 47 Ohio St.3d 86, 89, 548 N.E.2d 210 (1989); *State v. Bell*, 48 Ohio St.2d 270, 358 N.E.2d 556 (1976), *reversed on other grounds*, *Bell v. Ohio*, 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010 (1978). "We perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement." *Bell* at 276-277.[1]

{¶14} Nonetheless, the United States Supreme Court "has emphasized that admissions and confessions of juveniles require special caution." *In re Gault*, 387 U.S. 1, 45, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). "If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to

---

[1] Ohio has not joined the 14 states that invalidate a juvenile's waiver made without additional safeguards, such as the presence of a parent or guardian during questioning. *See* Note, *Juvenile Miranda Waiver and Parental Rights*, 126 Harv.L.Rev. 2359, 2362 (2003).

assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *Id.* at 55.

{¶15} The Ohio Supreme Court has provided guidance for determining whether a juvenile defendant voluntarily, knowingly and intelligently waived his *Miranda* rights. The totality of the circumstances test to be considered includes " 'the juvenile's age, experience, education, background, and intelligence' as well as his 'capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.' " *Barker II*, ___ Ohio St.3d ____, 2016-Ohio-2708, ___ N.E.3d ___, at ¶ 24, quoting *Fare*, 442 U.S. at 725, 99 S.Ct. 2560, 61 L.Ed2d 197. The court also instructs that "[a] juvenile's access to advice from a parent, guardian or custodian also plays a role in assuring that the juvenile's waiver is knowing, intelligent, and voluntary." *Barker II* at ¶ 24.

{¶16} With these principles in mind, we turn to a review of the totality of the circumstances in Barker's case.

{¶17} Here, before reading to Barker the notification of his *Miranda* rights, Detective Ballman told him, "All right. What I'm going to do is I'm going to read you a notification." He continued, "All right. When we are done I'm going to ask you if you understand it." He then read the notification form:

You have the right to remain silent.

Anything you say could be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and have him with you during questioning.

If you can't afford a lawyer, one will be appointed for you before any questioning if you wish.

7

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering questions at any time.

You also have the right to stop answering questions at any time until you talk to a lawyer.

{¶18}    After reading the form to Barker, Detective Ballman asked him, "Do you understand this?"  Mr. Barker said he did and signed the form.  Detective McGuffey asked Barker if he was familiar with the form.  Mr. Barker responded, "No, sir, my first time."  Detective Ballman clarified, "First time you have read, but you have seen it on t.v., right?"  When Barker agreed, Detective McGuffey further inquired, "The whole thing about you have the right to remain silent and all that stuff?"  To which Mr. Barker replied, "Yeah."  At the hearing on the motion to suppress, Detective Ballman testified that Barker appeared to understand the notification.

{¶19}    Looking at the totality of the circumstances, we conclude that Barker waived his *Miranda* rights knowingly, intelligently and voluntarily.  Although he had just turned 15 years old, he clearly indicated that he understood the rights read to him. The video recording shows Barker to be engaged in the interview process, even asking questions.  At one point, he asks for clarification from Detective McGuffey:

Detective McGuffey:  Whose idea was it to retaliate?  It wasn't the tall, dark-skinned * * *

Barker:  To retaliate what, sir?

Detective McGuffey:  To go over there and get Sam.

{¶20}    Despite the indications that he understood his rights, and by speaking with the detectives, waived those rights, Mr. Barker complains that the detectives did not take further steps to determine whether he substantively understood the rights.  He likens his case to *In re Harris*, 5th Dist. Tuscarawas No. 1999AP030013, 2000 Ohio

App. LEXIS 2390 (June 7, 2000), in which the Fifth Appellate District concluded that a 12-year-old defendant had not knowingly, intelligently and voluntarily waived his *Miranda* rights where the police officer questioning him had provided only a minimal explanation of the rights. Mr. Barker points out that, as in *Harris*, Detective Ballman provided no explanation of his *Miranda* rights. But in *Harris*, the police officer also gave the defendant contradictory information about his right to refuse to answer questions. Further, in *Harris*, an expert had testified that the defendant was not competent to appreciate his rights and waive them. Here, the form read by Detective Ballman provided a straightforward explanation of Barker's *Miranda* rights, and Detective Ballman felt assured of Barker's understanding.

{¶21}    Mr. Barker claims that the detectives treated the reading of his rights as a mere formality. He points to Detective Ballman's comment that "You're not admitting to anything. I am just telling you it just says I read you this." But the comment was a true statement about the notification of rights form; Mr. Barker admitted nothing when he signed it.

{¶22}    Mr. Barker also complains that, given his intelligence level, he was unable to understand the rights. He points to the amenability report prepared for his bindover hearing that indicated he had borderline intelligence and read at the level of a third-grader. But there is no indication that the report was presented to the trial court as part of its consideration of the motion to suppress. Neither party referenced it during the suppression hearing. Even if it was considered by the court, nothing in the report indicated that Barker was incapable of understanding the *Miranda* rights as they were read to him.

{¶23}    In support of the contention that the waiver was not voluntary, counsel argues that Barker's interview indicates that he did not understand what an attorney

9

was. After Barker had confessed to the murders in the first interview, Detectives Ballman and McGuffey met briefly with him again, seeking to have him identify a photograph of Washington. Before the detectives read Barker his *Miranda* rights, the following exchange took place:

> Barker: Could I say something?
>
> Detective Ballman: Go ahead, sir.
>
> Barker: I seen an attorney—an attorney, whatever that is.
>
> Detective Ballman: An attorney?
>
> Barker: Yeah.
>
> Detective Ballman: Okay. You—
>
> Barker: And she told me if you all to come up here just to ask for an attorney.
>
> Detective Ballman: Okay. Do you want to ask for an attorney now or do you want to talk to us? It's your choice.

Mr. Barker then indicated that he wanted to continue the interview without an attorney present and, after being read his *Miranda* rights, identified a photograph of Washington. Mr. Barker's comment about an attorney was must be balanced against his articulateness, his questions during the interview and his record of prior juvenile contacts, which resulted in two adjudications. Such factors indicate a savviness that contradicts his expressed uncertainty about what an attorney was.

{¶24} Finally, the absence of a parent during questioning does not change our determination that Barker knowingly, intelligently and voluntarily waived his rights. It may have been better practice to have a parent present during the interview, but considering the totality of the circumstances, we conclude that the record supports a finding that Barker understood the rights read to him and waived them.

## IV. Barker Made His Statements Voluntarily

{¶25}   Our determination that Barker knowingly, intelligently and voluntarily waived his *Miranda* rights does not end our inquiry into whether the trial court properly denied the motion to suppress.   Even if a defendant waives his *Miranda* rights, his statement to police officers can be found to have been made involuntarily.

{¶26}   While our review of Barker's waiver of his *Miranda* rights is grounded in his Fifth Amendment right not to incriminate himself, the question of the voluntariness of his statements is grounded in the Fourteenth Amendment.  *Colorado v. Connelly*, 479 U.S. 157, 169-170, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).   The amendment decrees that "[n]o State * * *  shall * * * deprive any person of life, liberty, or property, without due process of law."   By its terms, the amendment is implicated only when the "state" acts to deprive a citizen of his rights.   Thus, the crux of a due-process inquiry into voluntariness is whether state coercion compelled the statement.  *Connelly* at 169-170.   "Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law."  *Id.* at 164.

{¶27}   Ordinarily, then, the first question in determining whether a suspect's statement was made voluntarily is whether there was police coercion.  *See State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 93.   "[T]he use of an inherently coercive tactic by police is a prerequisite to a finding of involuntariness.   Hence, we need not assess the totality of the circumstances unless we first find that the detectives used a coercive tactic."  *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 71.   In this case, however, the court remanded for us specifically to look at the totality of the circumstances.   Whether this signals a break from the holding in *Osie* and *Perez* or application of a different rule for juveniles is unclear.   Regardless, we proceed to consider the voluntariness based on the Ohio Supreme Court's instruction in its remand.

**{¶28}** The Ohio Supreme Court explained what the totality of the circumstances review for voluntariness entails in Barker's case:

> The totality of the circumstances from which a court must determine the voluntariness of a juvenile's statement includes not only the details of the interrogation but also the juvenile's unique characteristics. That analysis here would necessarily include consideration of factors such as Barker's age, the late-night time of the interrogation, the absence of a parent or guardian, Barker's "borderline intelligence" and third-grade reading level, Barker's statement that he was not familiar with *Miranda* rights other than having heard of them from television, and Barker's apparent confusion about what an attorney was.

*Barker II* at ¶ 42.

**{¶29}** Much of Barker's voluntariness argument focuses on his perceived inability to understand his rights. Appellate counsel maintains that given Barker's age, low intelligence and the lack of an opportunity to consult with a parent, he did not understand the rights that he was waiving. We rejected this argument in the previous section in concluding that Barker knowingly, intelligently and voluntarily waived his *Miranda* rights. We rejected too the suggestion that Barker's apparent confusion about what an attorney was demonstrated his lack of understanding.

**{¶30}** Questions of Barker's ability to understand his rights and the absence of a parent during questioning must be considered in the context of determining whether the detectives' conduct was coercive so as to render Barker's statement involuntary. "The determination 'depends upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.' " *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed2d 405 (2000), quoting *Stein v. New York*, 346 U.S.

12

156, 186, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). We note that there can be no suggestion that any statement of Barker during the second interview was improperly coerced, even if we were to believe Barker didn't know what an attorney was. Mr. Barker had already confessed to the murders. In the second interview, he merely identified a photograph. We confine our search for coercion to the first interview.

{¶31} True, the interview of Barker occurred late at night. The recording of his interview shows him sitting in the interrogation room beginning at 11:40 p.m. The detectives entered the room and began questioning him at 11:57 p.m. It appears that Barker had been provided a soda. And before starting the interview, Detective Ballman can be heard asking if he needs food. After he was questioned for approximately 48 minutes, Mr. Barker requested a bathroom break, which the detectives allowed. After a three-minute break, questioning resumed for another seven minutes. All told, the length of time from when Barker was in the room to the end of questioning was just over an hour and 15 minutes. We conclude that the length of the interview was not so long as to become coercive. Further, the detectives did not threaten, deprive or mistreat Barker. Nor is there any other evidence of impermissible coercion.

{¶32} After examining the totality of the circumstances, we cannot conclude that Barker's statement resulted from coercion on the part of the detectives. The record supports a finding that Barker's statement was voluntary.

## V. Conclusion

{¶33} The trial court did not err when it denied Barker's motion to suppress. We overrule the supplemental assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**HENDON, P.J.,** and **MOCK, J.,** concur.

Please note:

    The court has recorded its own entry on the date of the release of this opinion.

