# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :          APPEAL NO.    C-240408
                                                   TRIAL NO.     B-1107595-C
    Plaintiff-Appellant,         :

vs.                                     :

TYSHAWN BARKER,                         :          *JUDGMENT ENTRY*

    Defendant-Appellee.          :


This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed 50% to appellant and 50% to appellee.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 11/21/2025 per order of the court.**


**By:**_____
    **Administrative Judge**

[Cite as *State v. Barker*, 2025-Ohio-5251.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240408 |
| | | TRIAL NO. B-1107595-C |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N* |
| TYSHAWN BARKER, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: November 21, 2025

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Arenstein & Gallagher, Elizabeth Conkin* and *William R. Gallagher*, for Defendant-Appellee.

**MOORE, Judge.**

{¶1} Plaintiff-appellant, the State of Ohio, appeals the judgment of the Hamilton County Court of Common Pleas granting defendant-appellee Tyshawn Barker's petition for postconviction relief. In his petition, Barker sought to vacate his convictions for two counts of aggravated murder, three counts of tampering with evidence, and two counts of aggravated robbery because his trial counsel had been constitutionally ineffective regarding Barker's motion to suppress his statements to police. While we hold that the lower court did not abuse its discretion in determining that Barker's trial counsel's performance was deficient, the common pleas court failed to engage in the appropriate analysis to determine whether Barker had been prejudiced by counsel's deficient performance. We also hold that the common pleas court did not abuse its discretion by vacating the dismissal of Barker's January 2014 petition. Accordingly, we reverse the trial court's judgment in part and remand the cause for the common pleas court to apply the appropriate prejudice analysis. The lower court's judgment is affirmed in all other respects.

### I. Factual and Procedural History

{¶2} This is the fourth time that this case has been before this court. We briefly summarized the details of the offenses in a previous decision as follows:

Mr. Barker, Dequantez Nixon, Brendan Washington and Carrielle Conn went to an apartment intending to kill one man but murdered a different man who had the bad luck to answer the door. Ms. Conn was the shooter in the first murder. Worried that Conn might snitch, her three companions lured her into the woods and killed her two days later.

*State v. Barker*, 2016-Ohio-7059, ¶ 3 (1st Dist.).

{¶3} Shortly before midnight, the day after Conn was murdered, 15-year-old

Barker was questioned about the shootings at police headquarters by Cincinnati Police Detectives Kurt Ballman and Terry McGuffey. Another suspect in the shootings, Nixon, had implicated Barker during questioning earlier in the evening, and Barker was found at Nixon's apartment when police were executing a search warrant.

{¶4} The detectives began Barker's questioning by asking Barker's name, address, phone number, age, mother's name, and where he went to school, whether he could read and write, and whether he had consumed any alcohol or drugs. Detective Ballman then read the *Miranda* warnings to Barker—that he had the right to remain silent, that anything he said could be used as evidence against him, and that he had the right to the presence of an attorney, either retained or appointed if he could not afford one. Barker told the detectives that he understood his rights, but when asked if he had heard of *Miranda* warnings before, he replied that this was his "first time." When questioned further, Barker stated that he had previously heard *Miranda* warnings read on television.

{¶5} The detectives then continued their interrogation without asking Barker whether he wanted to continue or speak with an attorney, and Barker made statements implicating himself in the shootings.

{¶6} The next day, the two detectives visited Barker at the juvenile detention facility. After Detective Ballman informed Barker that he was going to read the *Miranda* warnings to him again, Barker stated, "I've seen an attorney – whatever that is." This time Barker was asked whether he wanted to continue speaking with police or talk to his attorney, and Barker chose to continue. He then identified Washington from a picture and the interview ended.

### A. Juvenile Court

{¶7} Barker was eventually charged in juvenile court with various offenses

4

related to the shootings. After the juvenile court determined that there was probable cause that Barker had participated in the charged offenses, Barker was evaluated by Dr. Paul Deardorff, a court-appointed psychologist, who offered an opinion on whether Barker was amenable to rehabilitation in the juvenile court system. In his report, he stated that there were several factors that indicated that Barker should not be bound over to adult court, including:

> his age, lack of prior history of involvement with the mental health system, minimal involvement with the Juvenile Court system, minimal attempts to treat or rehabilitate, a strong relationship with his mother, exposure to abuse, the deaths of many relatives and one friend, his special education background which includes an IEP, an apparent history of ridicule, and his limited intellect.

**{¶8}** Dr. Deardorff described Barker's intellect as borderline or "mildly mentally retarded." Despite the factors indicating that Barker should not be transferred to adult court, Dr. Deardorff explained in the report that he thought the court needed to balance those factors with the "very serious nature" of the charges.

**{¶9}** Following the amenability hearing, at which Dr. Deardorff did not testify but his report was considered, the juvenile court determined that Barker was not amenable to rehabilitation in the juvenile court system and transferred his case to adult court.

### B. Adult-Court Proceedings

**{¶10}** After being transferred to adult court, Barker and his codefendants, Nixon and Washington, were each charged with four counts of aggravated murder, two counts of conspiracy, two counts of aggravated robbery, and three counts of tampering with evidence, all with gun and witness specifications. Barker filed a motion to

5

suppress his statements to police, arguing that he did not knowingly, intelligently, or voluntarily waive his *Miranda* rights. Nixon and Washington also filed motions to suppress their individual statements, and a joint hearing was held on the motions. At the hearing, Detective Ballman testified as to how each defendant was developed as a suspect. On cross-examination by Barker's counsel, Detective Ballman conceded he did not ask Barker detailed questions about his intellect, such as whether he was in any specialized educational program, but testified that he had no reason to believe that Barker did not understand the questions or the ongoing conversation during Barker's police interview. Video and audio recordings of the police interrogation of each suspect were admitted into evidence.

{¶11} A few days after the hearing, the trial court denied the motions to suppress from the bench, but the entry denying Barker's motion was never entered on the docket. Additionally, the entry setting Barker's motion for a hearing was also not docketed.

{¶12} In February 2013, Barker entered into an agreement with the State where the State agreed to dismiss the two conspiracy counts and several of the specifications to other counts in exchange for Barker entering a no-contest plea to each of the remaining offenses. At the plea hearing, the State read into the record the offenses against Barker as set forth in the indictment. Barker pled no-contest to each offense and was found guilty. The following month, a joint sentencing hearing was held for all three defendants. Barker was sentenced to an aggregate prison term of 25 years to life.

### C. Direct Appeal

{¶13} We affirmed Barker's convictions on direct appeal, overruling assignments of error challenging (1) his transfer to adult court, (2) the denial of his

6

motion to suppress, and (3) counsel's ineffectiveness at the amenability and motion-to-suppress hearings. *State v. Barker*, 2014-Ohio-3245 (1st Dist.). We briefly note that Barker's assignment of error as to his motion to suppress was raised after Barker's appellate counsel sought leave of court to raise an additional assignment of error, explaining that she had been unaware that a suppression hearing had occurred and that Barker's suppression motion had been denied because there were no entries on the docket.

**{¶14}** The Ohio Supreme Court reversed our judgment in Barker's direct appeal because, in determining that Barker had knowingly waived his *Miranda* rights, we referenced an Ohio statute, R.C. 2933.81(B), which creates a presumption that electronically-recorded statements by suspects of certain crimes are voluntary. The Court held that that statute was unconstitutional as applied to juveniles and remanded the case to us to consider the *Miranda* waiver. *State v. Barker*, 2016-Ohio-2708.

**{¶15}** On remand, we considered the totality of the circumstances surrounding Barker's waiver of his *Miranda* rights, including his age, and held that he had voluntarily, intelligently, and knowingly waived his *Miranda* rights. *State v. Barker*, 2016-Ohio-7059 (1st Dist.), *appeal not accepted for review*, 2017-Ohio-4038. In reaching our holding, we also noted, with respect to Barker's argument that he was unable to understand his rights because of his low intelligence, that Dr. Deardorff's amenability report, which noted Barker's low intelligence, was not introduced into evidence at the suppression hearing, but even if it had been, "nothing in the report indicated that Barker was incapable of understanding the *Miranda* rights as they were read to him." *Id.* ¶ 22.

### D. Postconviction Proceedings

**{¶16}** In January 2014, while his direct appeal was pending, Barker filed a

7

petition to vacate or set aside his convictions under R.C. 2953.21. In his petition, Barker asserted that his trial counsel was ineffective for failing "to investigate and prepare a case to establish that [Barker] was amenable to rehabilitation in the juvenile justice system." Specifically, Barker claimed that his trial counsel should have called Dr. Deardorff as a witness at the amenability hearing and should have had Barker evaluated by defense's own expert to show that his age and cognitive impairment limited his culpability. Within the petition, Barker indicated that he intended to amend the petition with the report and affidavit of an independent forensic psychologist and was in the process of securing those services.

{¶17} Four months later, Barker filed a pleading entitled "Information to Court Regarding Amended Petition to Vacate or Set Aside Conviction under R.C. 2953.21" ("the Notice"). In the Notice, postconviction counsel informed the court that Dr. Daniel L. Davis, board certified in forensic psychology and specializing in juveniles, had evaluated and prepared a report regarding Barker's amenability to rehabilitation in juvenile court. However, postconviction counsel explained that she had just recently discovered that a motion to suppress had been filed (and denied following a hearing) in Barker's case. Counsel explained that because an entry denying the motion to suppress had never been docketed, she was unaware of those proceedings. Consequently, postconviction counsel notified the court that Dr. Davis was now also going to evaluate Barker as to whether he had the ability to effectively waive his *Miranda* rights given his low-cognitive functioning. Postconviction counsel stated that the amended petition would be filed, which would include an additional ineffective-assistance-of-counsel claim related to Barker's motion to suppress his statements, after both reports had been received from Dr. Davis.

{¶18} Two weeks later, on May 30, 2014, the State filed a memorandum in

8

opposition to Barker's petition, arguing that Barker had not presented substantive grounds for relief. Specifically, the State noted that there was no evidence attached to the petition to demonstrate trial counsel had failed to investigate Barker's amenability to rehabilitation nor was there a report by an expert demonstrating that Barker's cognitive limitations and age made him amenable to rehabilitation. Two weeks after the State's filing, the common pleas court dismissed Barker's petition.

{¶19} We affirmed the dismissal[1] of Barker's petition on appeal, holding that there was no evidence attached to Barker's petition to "demonstrate an outcome-determinative deficiency in his counsel's performance at the [amenability] hearing." *State v. Barker*, 2016-Ohio-8476, ¶ 19 (1st Dist.). We also held that the common pleas court did not abuse its discretion in denying Barker's petition where Barker failed to amend the petition with the promised reports or request a stay. *Id.* at ¶ 24.

{¶20} In November 2014, Barker filed two pleadings: a petition for postconviction relief and a Civ.R. 60(B) motion to vacate the common pleas court's June 2014 dismissal of his January 2014 petition for postconviction relief.

{¶21} In his November 2014 petition, Barker sets forth one claim: his trial counsel was constitutionally ineffective in failing to investigate and present evidence of his low intelligence and cognitive delays at the suppression hearing and, specifically, for failing to have Barker evaluated by a forensic psychologist with the Miranda Rights Comprehension Instrument and presenting those test results at the suppression hearing. In support of his petition, Barker attached Dr. Davis's curriculum vitae and his evaluation report, which indicated that Barker has a full-scale IQ score of 70, which

---

[1] Although the common pleas court's entry indicates that it is "dismissing" Barker's January 2014 petition, in the direct appeal from that judgment, this court referred to the lower court's judgment as "denying" the petition.

is in the second percentile, indicating an intellectual disability, and a reading and comprehension level of a third grader. In his report, Dr. Davis concludes:

> Based upon my evaluation, it is my opinion, within reasonable scientific certainty, that Mr. Barker's understanding and appreciation of an important component of his Miranda Rights, specifically that [] his appreciation of his right to an attorney, his right to remain silent, and his ability to apply this right to an interrogation or court situation was compromised when he was interrogated by police on 10.17.11.

**{¶22}** Also attached to Barker's petition was his postconviction counsel's affidavit in which she attests that she had not learned of the existence of the suppression hearing until May 8, 2014. She then reviewed the transcript and consulted with Dr. Davis on May 22, 2014. She attests that because the State had not yet filed a response, she chose to wait to file the amended petition after she had received Dr. Davis's report.

**{¶23}** In his Civ.R. 60(B) motion to vacate the dismissal of his first postconviction petition, Barker argued that the failure to amend his January 2014 petition with a second ineffective-assistance-of-counsel claim regarding the suppression hearing, as well as Dr. Davis's reports, was due to excusable neglect. He contended that his postconviction counsel acted in good faith by informing the common pleas court that the January 2014 petition would be amended to add a claim challenging trial counsel's effectiveness at the suppression hearing and that an amended petition would be filed as soon as the additional report from Dr. Davis was received. Further, postconviction counsel appears to argue that, because she filed the Notice, she did not believe it was necessary to request a stay of the petition while awaiting Dr. Davis's additional report.

**{¶24}** These two pleadings—the motion to vacate and the November 2014 petition—remained pending before the common pleas court for seven years. In June 2021, the State filed responses to both. With respect to Barker's November 2014 petition for postconviction relief, the State asked the court to dismiss the petition, arguing that it was untimely and the petition did not meet the jurisdictional requirements for a late or successive filing. *See* R.C. 2953.23(A). Regarding the motion to vacate, the State argued that Barker was merely trying to circumvent the filing requirements for a petition for postconviction relief and that his failure to amend the January 2014 petition to add the second claim and attach Dr. Davis's reports was not excusable neglect, because Barker could have requested a stay but did not do so.

**{¶25}** In March 2023, following oral argument on both pleadings, the common pleas court granted Barker's Civ.R. 60(B) motion and vacated the court's entry, which had dismissed Barker's January 2014 petition for postconviction relief without an evidentiary hearing.[2] The court then granted an "evidentiary hearing on [Barker's] post conviction motion."

**{¶26}** The evidentiary hearing was held in the fall of 2023, and Barker's only argument at the hearing concerned his claim raised in his November 2014 petition that his trial counsel was ineffective with respect to his suppression hearing. At the hearing, Barker presented the testimony of Dr. Davis, who testified that in preparing to evaluate Barker's ability to effectively waive his *Miranda* rights, he reviewed Dr. Deardorff's amenability report, the videotape and transcript of Barker's interrogation, and all the material he had from his own "reverse bindover evaluation" of Barker,

---

[2] The State appealed the lower court's judgment vacating the dismissal of Barker's January 2014 petition, but this court dismissed the appeal for lack of a final, appealable order by entry dated May 25, 2023.

where he had reviewed Barker's school records and had interviewed Barker's mother and grandmother. Dr. Davis then evaluated Barker with the Weschler Adult Intelligence Scale Test (the "Weschler IQ test") and the Miranda Rights Comprehension Instrument (the "MRCI"). The Weschler IQ test confirmed Dr. Deardorff's testing that Barker's general intelligence level was in the second percentile, and that Barker had a reading comprehension level of a third grader. The MRCI demonstrated that although Barker, in a formal test setting, had adequate understanding of "Miranda vocabulary words," testing demonstrated that he did not know how to apply the rights (or the meaning of those words) in an interrogation setting. For example, Dr. Davis specifically noted that Barker could not appreciate his right to remain silent, as Barker consistently stated that he "*had* to talk to the judge and the police" and tell the truth. Dr. Davis also noted that Barker did not appreciate his right to have an attorney present, as reflected in his comments to the detectives during the second interrogation, that "he saw an attorney – whatever that is." Ultimately, Dr. Davis opined that Barker's ability to appreciate his *Miranda* rights and understand the consequences of waiving them was compromised by his intellectual disability.

{¶27} Following the evidentiary hearing, the common pleas court granted Barker's petition for postconviction relief, vacating his convictions and ordering a new trial, including a new suppression hearing. In its findings of fact and conclusions of law, the lower court found that Barker's trial counsel was defective in failing to attempt to challenge Barker's waiver of his *Miranda* rights, especially since trial counsel had access to Dr. Deardorff's amenability report, which indicated Barker's low-cognitive functioning, and could have introduced that report at the suppression hearing. Further, the court found, given the report, it was deficient performance for trial

counsel not to investigate Barker's ability to competently waive his *Miranda* rights and have him expertly evaluated using the MCRI and presenting those results at the suppression hearing. Finally, the court found that given trial counsel's defective performance at the suppression hearing, "the Court's confidence in the outcome of the suppression hearing is undermined" and concluded that Barker had received ineffective assistance of trial counsel at his suppression hearing.

{¶28} The State now appeals, bringing forth two assignments of error challenging the court's decision to vacate the judgment dismissing the January 2014 petition and granting the petition for postconviction relief.

## II. Analysis

### A. Civ.R. 60(B) Motion to Vacate

{¶29} In its first assignment of error, the State contends the common pleas court erred by granting Barker's Civ.R. 60(B) motion to vacate the lower court's entry dismissing Barker's January 2014 petition for postconviction relief without an evidentiary hearing.[3] We disagree.

{¶30} Before addressing the merits of the motion to vacate, we first consider the State's argument that the common pleas court lacked authority to vacate the dismissal of Barker's petition, where this court had already affirmed that dismissal on direct appeal. *See Barker*, 2016-Ohio-8476 (1st Dist.). In that appeal, we held that because Barker had neither amended his petition to include Dr. Davis's reports nor requested a stay to permit such an amendment, the common pleas court did not abuse its discretion in dismissing the petition for postconviction relief, which had been pending for six months. However, in reaching that holding, we did not specifically

---

[3] In its appeal, the State does not contest the applicability of Civ.R. 60(B) to vacate a judgment denying a petition for postconviction relief.

address whether the Notice, together with postconviction counsel's affidavit describing efforts to obtain a second report from Dr. Davis concerning Barker's competency to waive his right against self-incrimination, constituted excusable neglect because the question of excusable neglect was not an issue in that case. Accordingly, in ruling on the motion to vacate, the lower court was not revisiting an issue already decided by this court. We therefore proceed to the merits of the motion to vacate.

{¶31} In order to prevail on a motion to vacate a judgment pursuant to Civ.R. 60(B), the movant must demonstrate that (1) the party has a meritorious claim or defense to present if relief is granted, (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time, and where the grounds of relief are Civ.R. 60(B)(1), (2), or (3), not more than one year after the judgment. *GTE Automatic Elec. Co., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146 (1976), paragraph two of the syllabus. We review the grant of a Civ.R. 60(B) motion for abuse of discretion. *Id.* at 148.

{¶32} Civ.R. 60(B)(1) provides that a party may be relieved from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." On appeal, the State takes issue with the lower court's finding that Barker had demonstrated he was entitled to relief on the ground of "excusable neglect," which was postconviction counsel's failure to either attach Dr. Davis's reports to the January 2014 petition prior to its dismissal or request a stay or leave to amend his petition after the State had responded to Barker's petition.

{¶33} Excusable neglect is often explained by what it is not. For example, "a party's inaction is not excusable neglect when it shows 'a complete disregard for the judicial system' or when the party's conduct falls substantially below what is

reasonable under the circumstances." *Kidz Bop LLC v. Broadhead*, 2015-Ohio-3744, ¶ 11 (1st Dist.), citing *State ex rel. Jackson v. Ohio Adult Parole Auth.*, 2014-Ohio-2353, ¶ 23-25, and *Heard v. Dubose*, 2007-Ohio-551, ¶ 19 (1st Dist.). After reviewing the record in this case, we cannot say that Barker's postconviction counsel showed a "complete disregard for the judicial system" or that counsel's conduct fell substantially below what was reasonable under the circumstances. The suppression hearing and the denial of the suppression motion were never docketed in the court's journal, however, as soon as postconviction counsel learned about the hearing, she immediately consulted with Dr. Davis, and then filed the Notice, informing the court and the State that the petition was going to be amended to add an additional claim.  The Notice also explained that postconviction counsel was in the process of securing an additional evaluation and report from Dr. Davis as to whether Barker had competently waived his *Miranda* rights. Filing the Notice instead of requesting a stay was not unreasonable given that the State had not yet answered the petition, even though the petition had been filed and served on the State five months earlier. Finally, given that counsel, albeit erroneously, believed that the Notice was sufficient to apprise the court that the report would be filed shortly, we cannot say counsel's failure to then request a stay after the State filed its answer fell substantially below reasonable conduct. Accordingly, we hold that the trial court did not abuse its discretion in concluding that Barker demonstrated that he was entitled to relief based on excusable neglect.

{¶34} The State does not challenge the other two elements of the Civ.R. 60(B) motion, and we conclude that they were met. Barker filed his motion within five months of the court's judgment dismissing his January 2014 postconviction petition, well within the one-year time period, and he had a meritorious claim to present: ineffective assistance of counsel at his suppression hearing.

**{¶35}** Accordingly, we hold that the common pleas court did not err in granting Barker's Civ.R. 60(B) motion to vacate the court's entry dismissing his January 2014 petition for postconviction relief. The State's first assignment of error is overruled.

### B. Petition for Postconviction Relief

**{¶36}** In its second and final assignment of error, the State contends the court abused its discretion by granting Barker's petition for postconviction relief because the court lacked jurisdiction to consider the petition or because Barker failed to present substantive grounds for relief. To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the state or federal constitution. R.C. 2953.21(A)(1).

**{¶37}** The State first argues the court lacked jurisdiction to consider the petition because it was untimely. At the time Barker filed his November 2014 petition for postconviction relief, former R.C. 2953.21(H) required a petitioner to file a petition within 180 days from the date the transcript of proceedings was filed in the petitioner's direct appeal. Here, Barker filed the final transcript on May 27, 2014, making November 24, 2014, the deadline. Because Barker filed his petition on November 21, 2014, it was timely.

**{¶38}** Next, the State argues that even if Barker's petition was timely, it constituted a successive petition and, because it failed to meet the jurisdictional requirements of R.C. 2953.23(A), the lower court lacked jurisdiction to consider it. We disagree. Barker was not required to satisfy R.C. 2953.23(A)'s jurisdictional requirements because the common pleas court had already granted his Civ.R. 60(B) motion to vacate the dismissal of his January 2014 petition, which was once again

pending before the court. The common pleas court properly treated Barker's "second" petition as an amendment to his original January 2014 petition; therefore, it was not a successive petition. The amended petition was set for an evidentiary hearing, during which the record reflects that Barker abandoned his claim that trial counsel was ineffective at the amenability hearing and proceeded solely on his claim of ineffective assistance at the suppression hearing. We now turn to the common pleas court's consideration of that claim on the merits.

**{¶39}** A common pleas court's decision granting a petition for postconviction relief will be upheld absent an abuse of discretion. *State v. Gondor*, 2006-Ohio-6679, ¶ 58. "A reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent, credible evidence." *Id.*

**{¶40}** The State argues that Barker did not present substantive grounds for relief with respect to his postconviction claim challenging the effectiveness of his trial counsel at his motion to suppress. To prevail on a claim of ineffective assistance of trial counsel under the Sixth Amendment to the United States Constitution, a postconviction petitioner must demonstrate (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

**{¶41}** Turning to the first prong of the *Strickland* test, the trial court found that trial counsel's failure to investigate whether Barker could properly waive his *Miranda* rights given his intellectual disability, including consulting with an expert, and counsel's failure to, at the very least, submit Dr. Deardorff's amenability report demonstrating Barker's intellectual disability, fell below an objective standard of reasonableness. We agree. Trial counsel had Dr. Deardorff's amenability report indicating Barker's borderline intelligence and third-grade reading level. Despite

having information that Barker may not have been able to intelligently waive his *Miranda* rights, trial counsel failed to investigate the matter further and hire defense's own expert to determine whether Barker could effectively waive his rights.

{¶42} The State contends that trial counsel's performance was not deficient because Barker's eventual testing with the MRCI reflected average scores in each section. However, Dr. Davis explained that although the MRCI results showed Barker had an adequate understanding of *Miranda* vocabulary in a formal testing environment, they also demonstrated that he lacked the ability to apply those terms— or to exercise his rights appropriately—during an actual interrogation. Dr. Davis further opined that Barker's intellectual disability impaired his ability to appreciate his *Miranda* rights and understand the consequences of waiving them. Accordingly, given the expert testimony, competent, credible evidence supports the common pleas court's finding that trial counsel's failure to investigate Barker's capacity to knowingly and intelligently waive his *Miranda* rights constituted deficient performance.

{¶43} Next, the common pleas court found, with respect to the prejudice prong of *Strickland*, that its confidence in the outcome of the suppression hearing was undermined. Although the State did not address prejudice in its appellate brief, relying instead on its argument that trial counsel's performance was not deficient, we must nonetheless consider prejudice in determining whether the common pleas court properly granted the petition.

{¶44} Under an ineffective-assistance-of-counsel analysis, "[p]rejudice from defective representation sufficient to justify a reversal exists only where the result of the proceedings was unreliable or fundamentally unfair because of counsel's performance." *State v. Ross*, 2024-Ohio-3117, ¶ 37, citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993), and *State v. Carter*, 1995-Ohio-104. In cases where trial counsel is

alleged to have been deficient for failing to file a motion to suppress or raise a meritorious argument in support of suppression, the court must determine if the motion to suppress would have probably been granted. *State v. Rosemond*, 2019-Ohio-5356, ¶ 34 (1st Dist.).

{¶45} In the context of a plea-bargain case, the United States Supreme Court held that the prejudice inquiry under *Strickland* requires a defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). As the United States Supreme Court explained in *Premo v. Moore,* 562 U.S. 115, 129, 131-132 (2011), citing *Hill*, and as the Ohio Supreme Court recognized in *State v. Bird,* 81 Ohio St.3d 582, 585 (1998), a defendant who pleads guilty or no contest must demonstrate a reasonable probability that, but for counsel's errors, he would not have entered his plea and insisted on going to trial. Thus, the prejudice inquiry in this case must also focus on whether trial counsel's constitutionally-deficient performance at the suppression hearing affected the outcome of the plea process—specifically, whether Barker has shown a reasonable probability that, but for counsel's errors at the suppression hearing, his motion to suppress would have been granted and he would not have entered no-contest pleas and would have elected to go to trial.

{¶46} Determining whether Barker would have not entered his pleas and insisted on going to trial requires consideration of the other evidence, aside from Barker's inculpatory statements, that could demonstrate his commission of the charged offenses. For example, if there is DNA evidence connecting Barker to the crimes, he might still have opted to enter no-contest or guilty pleas. Conversely, if the only evidence consisted of witness testimony connecting Barker to the offenses, he

may have been more likely to take the risk of proceeding to trial.

{¶47} Here, the common pleas court did not apply the correct prejudice analysis in determining that Barker had received ineffective assistance at his suppression hearing. Accordingly, we remand the cause to the trial court to conduct the appropriate prejudice inquiry and determine whether trial counsel's deficient performance at the suppression hearing prejudiced Barker. The lower court's prior finding that its confidence in the suppression hearing was undermined was insufficient because the court failed to consider whether Barker, if the suppression motion had been granted, would have declined to enter no-contest pleas and insisted on proceeding to trial. Because the court did not engage in the correct prejudice analysis, we reverse the judgment granting Barker's petition and remand the cause for further proceedings. On remand, the court may review the record or hold an additional evidentiary hearing to determine whether Barker would have entered his pleas given the other evidence the State would have presented to support the charged offenses.

{¶48} Having determined that the common pleas court had jurisdiction to consider Barker's amended petition for postconviction relief and that the court did not abuse its discretion in finding that trial counsel's performance at the suppression hearing was deficient, we overrule the State's second assignment of error in part. We sustain the second assignment, however, to the extent that the common pleas court failed to apply the proper prejudice analysis. Accordingly, we remand the cause to the common pleas court to consider the prejudice prong of *Strickland* as it relates to Barker's claim that his trial counsel's deficient performance at the suppression hearing prejudiced him, considering whether, if Barker's statements had been suppressed, Barker would have declined to enter pleas and insisted on going to trial.

### *III. Conclusion*

**{¶49}** Based on the foregoing, we reverse the trial court's judgment granting Barker's postconviction petition, and we remand the cause to the common pleas court to consider the prejudice inquiry under *Strickland* consistent with this opinion and the law. We affirm the common pleas court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**CROUSE, P.J.,** and **NESTOR, J.,** concur.