DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Eric F. Edwards, appeals from his conviction in the Summit County Court of Common Pleas for receiving stolen property. We affirm.
 I. {¶ 2} On the morning of May 9, 2003, Mr. Edwards was spotted by an Akron Police Department officer in the driver's seat of a red Chevy Camaro parked on Mallison Street near the corner of Mallison and Vernon Odom Drive in Akron, Ohio. This particular vehicle was listed as an "entered stolen vehicle" on the police department's "hot sheet" issued that morning. Mr. Edwards informed the police officer that he had gotten that car from his friend, Frenchy earlier that morning. The police officer informed Mr. Edwards that the Camaro was reported stolen, and subsequently arrested Mr. Edwards.
 {¶ 3} On May 19, 2003, the Summit County Court of Common Pleas Grand Jury indicted Mr. Edwards on one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree, and one count of illegal use or possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1), a misdemeanor of the fourth degree. At his arraignment, Mr. Edwards pled not guilty to both counts, and the matter proceeded to a jury trial. At trial, Mr. Edwards' counsel moved for acquittal pursuant to Crim.R. 29(A), and also renewed the motion at the conclusion of all the evidence. The court denied the motion in both instances. On July 22, 2003, a jury found Mr. Edwards guilty of both charges. The trial court sentenced Mr. Edwards accordingly. It is from his conviction for receiving stolen property that Mr. Edwards now appeals.
 {¶ 4} Mr. Edward timely appealed, asserting one assignment of error for review.
 II. Assignment of Error
"Appellant's conviction for receiving stolen property was based on insufficient evidence as a matter of law."
 {¶ 5} In his sole assignment of error, Mr. Edwards avers that there was insufficient evidence in the record to support his conviction for receiving stolen property. We disagree.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216.
 {¶ 7} "The test for `insufficient evidence' requires the court to view the evidence in the light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Leggett (Oct. 29, 1997), 9th Dist. No. 18303. We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction. Id. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 8} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." State v. Daniels
(June 3, 1998), 9th Dist. No. 18761, quoting State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value[.]'" State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." State v. Chisolm (July 8, 1992), 9th Dist. No. 15442, quoting Jenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, citing Hurt v. Charles J. Rogers Transp.Co. (1955), 164 Ohio St. 329, 331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168, citing Hurt, 164 Ohio St. at 331.
 {¶ 9} In support of his sole assignment of error, Mr. Edwards maintains that the State did not produce evidence to establish that the Camaro was initially stolen. Mr. Edwards was found guilty of receiving stolen property, in violation of R.C.2913.51(A). This statute subsection provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." The pertinent part of the theft statute, R.C. 2913.02, states:
"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
"(1) Without the consent of the owner or person authorized to give consent[.]" R.C. 2913.02(A)(1).
 {¶ 10} R.C. 2913.01 defines the term "deprive," in pertinent part, as follows:
"(3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration." R.C. 2913.01(C)(3).
 {¶ 11} Officer Larry Stephens testified on behalf of the State. Officer Stephens testified that during his morning shift on May 9, 2003, he spotted, at the location of Mallison and Vernon Odom Drive in Akron, a red Chevy Camaro. He testified that the Camaro was listed on the "hot sheet" of all the currently reported stolen vehicles, which was given to him by the police department at the beginning of his shift. Officer Stephens described this area of the city as a high crime and high drug activity area, with Akron Metropolitan Housing Authority housing. Officer Stephens testified that a black male, who he identified as Mr. Edwards, was sitting in the driver's seat of the car. He testified that he approached the car, and that Mr. Edwards explained to him that he was waiting in the car for his friend, "Frenchy," who had gone to visit someone in a nearby apartment complex. Officer Stephens further testified that Mr. Edwards stated that he had obtained the car from Frenchy. He testified that Mr. Edwards told him that Frenchy had said that the car belonged to his girlfriend, whose name Mr. Edwards believed was "Kim." Officer Stephens testified that Mr. Edwards relayed to him that Frenchy had picked him up around 5:00 a.m. that same morning, around Thornton and Raymond Streets in Akron, that they drove around in the car for several hours, and that they stopped on Mallison Road. Officer Stephens testified that when he informed Mr. Edwards that the car was stolen, Mr. Edwards stated that he was not aware of that fact.
 {¶ 12} Additionally, Officer Stephens testified that he arrested Mr. Edwards, and that a search of the car was performed. Officer Stephens noted that the search uncovered two crack cocaine pipes, and two sets of keys — one key was in the ignition of the car, and the other set of keys was found in the car under the console. Officer Stephens noted that it is generally possible to make a copy of a key without having the actual key, if one has the serial number for a key. Officer Stephens also testified that a "couple of car registrations, miscellaneous letters, and some receipts with Kim Costlow's name" were found in the car. Officer Stephens also testified as to Mr. Edwards' relationship with Frenchy. Specifically, he testified that "all [Mr. Edwards] could give [him] was the Frenchy * * * nickname[,]" and that "he didn't know Frenchy's last name." He didn't know where Frenchy lived at, * * * no way to contact Frenchy. "He didn't know anything about the girlfriend Kim[.]" Finally, Officer Stephens also testified to the fact, that, in general, a connection exists between drug users and stolen vehicles. He testified to the fact that "geeking a car[,]" the trading of drugs for the use of a vehicle, typically occurs in high-drug and low income areas of the city.
 {¶ 13} Officer James Soroky, who had responded to Officer Stephens' dispatch call regarding this incident, also testified on behalf of the State. Officer Soroky testified generally as to the connection between stolen automobiles and drug usage in this particular area, stating that "[a] lot of times, vehicles that are reported stolen are actually vehicles that are lent out or end up being lent out for use of drug activity." On cross-examination, Officer Soroky confirmed that "geeking" is a common practice in this area.
 {¶ 14} Additionally, Kim Costlow testified on behalf of the State. Ms. Costlow testified that she owns a red 1989 Chevy Camaro which she typically keeps in her driveway. She testified that she only drives the Camaro approximately once a month because she owns another car. Ms. Costlow testified that in the afternoon on May 7, 2003, she had driven the Camaro and returned with it and parked it in her driveway, leaving the car unlocked and taking the keys to the car inside the house with her. She testified that she did not leave her house again that day, and that around nine o'clock in the morning the next day, her fiancé, who lived with her, informed her that her Camaro was gone from the driveway. She testified that she looked outside, and that the Camaro was in fact gone from the driveway. Ms. Costlow testified that she immediately called the police, and that she received a phone call from the police the next day informing her that they had recovered the Camaro. She testified that when she picked up the car, she noticed that it "had a lot more dings, [and] chipped paint[;] that the seats had vomit on them; and that items that she had not left in the car were found in the car, such as "beer cans, cassette tapes, receipts from buying those * * * things * * *."
 {¶ 15} Ms. Costlow confirmed during her testimony that he she did not know anyone named Eric Edwards, or "Frenchy," or anyone that lives around the Thornton or Mallison area. Ms. Costlow further testified that she had not given anyone permission to take her Camaro on May 7, 2003 or the day after. On cross-examination, Ms. Costlow confirmed that the Camaro was still present in her driveway around 10:30 p.m. on May 7, 2003, because she had taken the garbage out around that time. She also testified that she only had one set of keys for the Camaro.
 {¶ 16} In light of the direct and circumstantial evidence presented by the State, we find that sufficient evidence in the record exists from which a rational trier of fact could infer and conclude beyond a reasonable doubt, that Mr. Edwards was in possession of the red 1989 Camaro, and that he had reasonable cause to believe that the person who had initially obtained the Camaro had done so through theft. See Leggett, supra; R.C.2913.51(A).
 {¶ 17} Mr. Edwards contends that the State did not produce evidence to establish ownership of the automobile in which Mr. Edwards was found sitting on May 9, 2003. R.C. Chapter 13, theft offenses, defines "owner" as "any person, other than the actor, who is the owner of, or who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." R.C. 2913.01(D). Thus, based on the language of R.C.2913.01(D), it is unnecessary to prove title ownership in the object stolen, for the purposes of a theft offense. State v.Rhodes (1982), 2 Ohio St.3d 74, 76 (stating that the prosecution is not required to introduce a certificate of title to demonstrate that the person deprived of a motor vehicle is the "owner" of the vehicle, as defined in R.C. 2913.01(D)). Although proof of title ownership was not required for the purpose of proving the offense of receiving stolen property in this case, we nevertheless conclude that sufficient evidence exists in the record from which any rational trier of fact could, at the very least, infer and conclude beyond a reasonable doubt, that Ms. Costlow was the owner of the 1989 Camaro. See Leggett, supra; R.C. 2913.01(D).
 {¶ 18} Based upon a careful review of the record, and in viewing the evidence in the light most favorable to the prosecution, we cannot say that no rational trier of fact — in this case, the jury — could have found, beyond a reasonable doubt, that Mr. Edwards had committed the offense of receiving stolen property. See Leggett, supra. Accordingly, Mr. Edwards' sole assignment of error is overruled.
 III. {¶ 19} Mr. Edwards' sole assignment of error is overruled. The conviction in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Whitmore, P.J., Slaby, J., concur.