[Cite as *In re A.S.*, 2020-Ohio-5490.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| | | No. 20AP-18 |
| A.S., a minor child, | : | (C.P.C. No. 18JU-12900) |
| Defendant-Appellant. | : | (REGULAR CALENDAR) |

D E C I S I O N

Rendered on December 1, 2020

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*, for appellee. **Argued:** *Michael P. Walton*.

**On brief:** *David K. Greer*, for appellant. **Argued:** *David K. Greer*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

SADLER, P.J.

{¶ 1} Defendant-appellant, A.S., appeals from the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling his objections to the magistrate's decision to deny his motion to suppress and adjudicating him a delinquent minor as a result of having committed the offense of receiving stolen property. For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 5, 2018, a complaint was filed in Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, against appellant, a juvenile, alleging he received stolen property in violation of R.C. 2913.51, a felony of the fourth degree. Appellant entered a denial on January 18, 2019.

{¶ 3} On February 1, 2019, appellant filed a motion to suppress statements made to law enforcement during an interview on September 16, 2018. Appellant argued he was

subjected to a custodial interrogation without knowingly and intelligently waiving his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The case was referred to a magistrate pursuant to Juv.R. 40.

{¶ 4} On May 30, 2019, the magistrate conducted a suppression hearing. At the hearing, the sole witness of plaintiff-appellee, State of Ohio, was Detective Jeremy Gabriel. Gabriel testified he has been a detective with the Franklin County Sheriff's Office for nearly 14 years. On September 16, 2018, a deputy contacted Gabriel concerning a juvenile detained for allegedly receiving a stolen vehicle. Gabriel was assigned to interview appellant regarding the stolen automobile.

{¶ 5} The interview was recorded and played at the suppression hearing. While only a portion of the video was played during the hearing, the entire video was introduced as an exhibit. The video revealed Gabriel began the interview at 4:32 a.m. Gabriel entered the room and informed appellant he had attempted to contact appellant's mother but was unsuccessful. Appellant stated his mother will be "disappointed" and "shocked" when she hears about what had happened. (Suppression Tr. at 21.) Appellant requested a trash can stating that he might vomit. Gabriel asked if he had taken any drugs or ingested anything, which appellant denied. Appellant stated "[j]ust the situation is terrible, sir." (Suppression Tr. at 22.) Gabriel asked appellant his age and where he went to school. Appellant stated he was 15 years old and was a sophomore at Gahanna-Lincoln. When asked how he was doing in school, appellant said his grades were "alright." (Trial Tr. at 39.)[1] Gabriel informed appellant that he was going to read him his rights and to let him know if he had any questions. Appellant inquired when he should ask the questions. Gabriel instructed appellant to wait to ask any questions until after he finished reading the waiver. Gabriel asked if appellant understood, which appellant responded in the affirmative. Gabriel read appellant the *Miranda* waiver and then engaged him in a series of questions:

> [Detective]: Do you have to talk to me?
>
> [Appellant]: Yes, sir.
>
> [Detective]: Do you have to talk to me? No. You understand?

---

[1] The suppression hearing transcript does not document appellant's recorded response to Gabriel's question. The transcript from the trial documents shows appellant's response as "alright." After an independent review of the video, we find the trial transcript accurately reflects appellant's response to Gabriel's question.

[Appellant]: Oh, yeah.

[Detective]: You understand what-

[Appellant]: You're going to ask me if I have to talk to you?

[Detective]: Yeah, do you have to?

[Appellant]: No.

[Detective]: Okay. Can you have a lawyer present with you at any time during our conversation?

[Appellant]: Yes, sir.

[Detective]: Yes. If you can't afford one, can you still have a lawyer? If you or your mother or anybody in your family can't afford it, do you still get one?

[Appellant]: Yes.

[Detective]: Yes. The Courts will appoint one to you for free, okay?

[Appellant]: Okay.

[Detective]: So, at any point during our conversation can you stop talking to me?

[Appellant]: Yes, sir.

[Detective]: Yes, you can. Do you understand your rights?

[Appellant]: Yes, sir.

[Detective]: Do you have any questions about your rights?

[Appellant]: No, sir.

[Detective]: No?

[Appellant]: No.

(Suppression Tr. at 23-25.)

{¶ 6} The interrogation lasted a total of 13:35 minutes. There is no dispute that the waiver was not signed by appellant. In response to why Gabriel did not have appellant sign the waiver, Gabriel explained "[w]e don't have a policy necessarily in place where the defendant has to sign, it is more imperative that we demonstrate that I see that he understands [his] rights." (Suppression Tr. at 19.) Gabriel also testified he felt it was important to give further clarifying questions for juveniles. No additional witnesses were presented at the hearing.

{¶ 7} On July 12, 2019, the magistrate denied the motion to suppress. Appellant filed objections to the magistrate's ruling on July 15, 2019. On August 28, 2019, the trial

court heard oral arguments on the objections and allowed supplemental briefing in the case. On September 19, 2019, the court overruled appellant's objections finding the issue was not ripe for review.

{¶ 8} On October 17, 2019, the case proceeded to trial. Appellee called B.C. as its first witness. B.C. testified he has been a resident of Franklin County for ten years and is the registered owner of a red 2011 Mitsubishi Lancer. According to B.C., on September 2 or 3, 2018, his automobile was stolen outside his girlfriend's apartment. B.C. testified he reported the theft to the police immediately after noticing the car was missing. B.C. stated he did not give anyone permission to use the vehicle. According to B.C., law enforcement later informed him that the vehicle was recovered and to pick it up. B.C. stated he picked up the vehicle from the impound lot and noticed damage to the back bumper. B.C. paid $500 for his deductible to repair the damage to the vehicle.

{¶ 9} Appellee called Deputy Jason Davis as its next witness. Davis testified he has been employed with the Franklin County Sheriff's Office for the last eight and one-half years. On September 16, 2018, Davis was working the third shift patrol in a marked cruiser. According to Davis, during the early morning hours, he was traveling westbound near the intersection of Hamilton Road and Morse Road when he ran a vehicle registration on his mobile data terminal for the vehicle next to him. The search of the automobile's registration indicated the vehicle had been reported stolen, and he initiated a traffic stop.[2] Davis described the vehicle as a maroon four door. Davis stated when he approached, appellant was the sole occupant of the automobile. According to Davis, when asked to provide identification, appellant indicated that he did not have any identification on him. Davis testified he determined appellant was a juvenile without a valid driver's license. Davis placed appellant under arrest and took him to the I.D. Bureau and then Detective Bureau. Davis identified appellant in the courtroom as the driver that he arrested on September 16, 2018. Davis testified he made efforts to contact appellant's mother but ultimately had to transport appellant to Franklin County Children Services.

{¶ 10} Appellee called Gabriel as its final witness. Gabriel testified Davis contacted him regarding a minor child arrested for possession of a stolen vehicle. According to

---

[2] Appellant objected to this statement. The magistrate overruled the objection accepting the testimony not for the truth of the matter asserted but effect on the receiver as the cause for the stop.

Gabriel, he attempted to call the minor's mother prior to interviewing appellant but was unsuccessful. Gabriel identified appellant in the courtroom as the juvenile he interviewed on September 16, 2018 at the Detective Bureau. After a brief discussion of the *Miranda* warning, Gabriel testified as to the substance of his interview with appellant. According to Gabriel, appellant confessed he "kinda [sic] knew it [the vehicle] was stolen." (Trial Tr. at 29.) The video recording of the interview was then played for the magistrate. During the interview, appellant stated he got the vehicle around the fifth or sixth of September from a friend named "Jue." (Trial Tr. at 43.) Appellant stated he would use the vehicle as transportation for school, and the vehicle had been in his possession for one week or so. There is no dispute that appellee presented no evidence of the vehicle's license plate or vehicle identification number.

{¶ 11} At the conclusion of appellee's case-in-chief, appellant moved for acquittal arguing that appellee presented insufficient evidence to prove ownership of the vehicle. The magistrate overruled the motion determining B.C. testified he was the daily driver, used the vehicle everyday going to work, and picked up the vehicle after it was impounded. Counsel for appellant declined to call any witnesses, and the parties proceeded with closing arguments.

{¶ 12} On October 21, 2019, the magistrate issued his initial ruling finding appellant delinquent having committed the offense of receiving stolen property in violation of R.C. 2913.51, a felony of the fourth degree. On October 28, 2019, appellant objected to the magistrate's findings arguing there was insufficient evidence appellant was driving B.C.'s vehicle, and the magistrate erred in overruling the motion to suppress appellant's statements because he had not knowingly and intelligently waived his *Miranda* rights.

{¶ 13} On November 25, 2019, the magistrate issued its findings of facts and conclusions of law. Appellant filed objections to the magistrate's decision on November 27, 2019, which were opposed by appellee. The court heard oral arguments on appellant's objections on December 4, 2019.

{¶ 14} On January 3, 2020, the trial court overruled appellant's objections and adopted the magistrate's findings. The trial court concluded appellee proved beyond a reasonable doubt that appellant was a delinquent minor for committing the offense of receiving stolen property in violation of R.C. 2913.51. On the suppression issue, the trial

court agreed with the magistrate's findings allowing the statements of appellant as admissible evidence. The trial court required a $500 restitution order.

{¶ 15} Appellant filed a timely appeal.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Appellant assigns the following as trial court error:

[1.] The trial court erred in overruling the minor child's motion to suppress his statements to Detective Gabriel because the state failed to establish that the minor child, without a parent present, without sleep and not feeling well and the interrogation conducted in the middle of the night, and without a written waiver for him to review and sign, knowingly and intelligently waived his Miranda rights.

[2.] The trial court erred in finding the minor child delinquent of receiving stolen property-motor vehicle when the state failed to establish that the vehicle the minor child was driving was that of [B.C.], the owner named in the Complaint. The trial court's delinquency finding therefore violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which required sufficient proof for a conviction.

## III. LEGAL ANALYSIS

### A. Appellant's First Assignment of Error

{¶ 17} In his first assignment of error, appellant argues the juvenile court erred by denying his motion to suppress. Specifically, appellant alleges he did not knowingly and intelligently waive his *Miranda* rights during the custodial interrogation on September 16, 2018.

{¶ 18} The applicable standard of review on appeal from a trial court judgment that adopts a magistrate's decision varies based on the issues that were "(1) preserved for review through objections before the trial court and (2) raised on appeal by assignment of error." (Internal quotations omitted.) *Fraley v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 18AP-731, 2019-Ohio-2804, ¶ 9; *Feathers v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-588, 2017-Ohio-8179, ¶ 10; *In re Adoption of N.D.D.*, 10th Dist. No. 18AP-561, 2019-Ohio-727, ¶ 27. Accordingly, we will note the standard of review as they are presented in each assignment of error.

{¶ 19} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32, citing *State v.*

*Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. We are required to accept the trial court's findings of fact if supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997). We therefore review the trial court's application of the law de novo.

{¶ 20} The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution ensure that no person shall be forced to be a witness against himself in a criminal proceeding. *In re D.B.*, 10th Dist. No. 17AP-83, 2018-Ohio-1247, ¶ 16, citing *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 30. In *Miranda*, the United States Supreme Court held that to protect against the inherent risk of coercion during a custodial interrogation, procedural safeguards are needed to ensure the defendant's right against self-incrimination. *Miranda*, 384 U.S. at 444. A custodial interrogation is defined as " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *In re D.B.* at ¶ 17, quoting *Miranda* at 444. Accordingly, "[a] suspect in police custody 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, quoting *Miranda* at 479.

{¶ 21} The Supreme Court of Ohio has concluded that to determine whether a suspect is knowingly, intelligently, and voluntarily waiving his *Miranda* rights, the reviewing court must engage in a totality of the circumstances analysis. *State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, ¶ 24, citing *State v. Clark*, 38 Ohio St.3d 252, 261 (1988). The totality of circumstances includes: "(1) the accused's age, mentality, and prior criminal experience, (2) the length, intensity, and frequency of the interrogation, (3) the existence of physical deprivation or mistreatment, and (4) the existence of inducement or threat." *In re D.B.* at ¶ 18, citing *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 11. When the suspect is a juvenile, the factors include: " 'the juvenile's age,

experience, education, background, and intelligence' as well as his 'capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.' " *Barker* at ¶ 24, quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979).

{¶ 22} The state of Ohio has declined to join other states that provide per se rules that invalidate a juvenile's *Miranda* waiver without additional protections, such as requiring a parent or guardian present, during an interrogation. *State v. Barker*, 1st Dist. No. C-130214, 2016-Ohio-7059, fn. 1, citing *Juvenile* Miranda *Waiver and Parental Rights*, 126 Harv.L.Rev. 2359, 2362 (2003). The Supreme Court of Ohio has also declined to require a parent or guardian present during the interrogation of a juvenile writing, " '[w]e perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement.' " *Barker*, 2016-Ohio-7059, at ¶ 13, quoting *State v. Bell*, 48 Ohio St.2d 270, 276-77 (1976), *rev'd on other grounds*, *Bell v. Ohio*, 438 U.S. 637 (1978). The Supreme Court of Ohio did acknowledge the lack of a parent is a factor in determining whether the waiver was knowing, intelligent, and voluntary. *Barker*, 2016-Ohio-2708, at ¶ 24, citing *In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, ¶ 96.

{¶ 23} Considering the totality of the circumstances, we conclude appellant knowingly and intelligently waived his *Miranda* rights. As set forth previously, appellant was arrested in the morning hours of September 16, 2018. Prior to the interview, the record reflects Gabriel attempted to reach appellant's mother but was unsuccessful. While appellant was only 15 years old, the video evidence reveals he understood the rights as read to him by the detective, and appellant was alert and engaged during the interview. Appellant noted he was in high school and doing well in school. Throughout the interview, the detective made no overt threats, raised his voice, or coerced information from appellant. There is also no evidence of physical deprivation or mistreatment. While Gabriel did not have appellant sign the *Miranda* warning, the detective orally read the warning and asked appellant several additional questions to ensure he understood his rights before beginning the interview. In fact, when appellant misstated one of the rights, the detective corrected appellant then restated the question. While appellant was not offered food or water given

the interrogation only lasted 13 minutes, we find this factor insignificant. The fact that no parent was present during the interview is not enough to conclude appellant did not knowingly and intelligently waive his rights.

{¶ 24} Appellant argues the detective's decision to interview him at 4:32 a.m. while appellant was not feeling well affected his ability to knowingly and intelligently waive his *Miranda* rights. We find this argument unpersuasive. First, when appellant requested a trash can, Gabriel asked if he had taken any drugs or ingested anything, which appellant denied. Appellant stated "[j]ust the situation is terrible, sir." (Suppression Tr. at 22.) The trial court concluded that appellant was upset as a result of the situation rather than physically ill. We find the trial court's factual interpretation reasonable as the video reflects appellant was engaged throughout the interview and appeared unaffected by the upset stomach. Regarding the late hour of the interview, the traffic stop occurred around 3:00 a.m., and appellant was interviewed at 4:32 a.m. It is logical the interrogation would occur after the arrest. Given the interview was only 13 minutes, we conclude the time of the interview did not meaningfully impact appellant's ability to knowingly and intelligently waive his *Miranda* rights.

{¶ 25} While appellant relies on the Supreme Court of Ohio's ruling in *Barker*, 2016-Ohio-2708, the case does not stand for the proposition that appellant has claimed. In *Barker*, the Supreme Court of Ohio considered whether the statutory presumption of voluntariness under R.C. 2933.81(B), based on an electronically recorded interrogation, applied to juveniles. The *Barker* court found the presumption was unconstitutional for juveniles, and the case was remanded back to the First District Court of Appeals to consider, without the R.C. 2933.81(B) presumption, whether the juvenile knowingly, intelligently, and voluntarily waived his *Miranda* rights. On remand, the First District found that based on the totality of the circumstances, the juvenile had knowingly, intelligently, and voluntarily waived his *Miranda* rights.

{¶ 26} The present case is analogous to *Barker* in a number of ways. Like *Barker*, appellant was a 15-year-old interrogated late at night with no parent present. While appellant was interviewed for approximately 13 minutes, Barker's interview lasted over 1 hour and 15 minutes. *Barker*, 2016-Ohio-7059, at ¶ 31. In both cases, the juveniles were engaged and asked questions during various points in their interviews. While minimized

by the First District, there was also evidence the juvenile in *Barker* had borderline intelligence only reading at a third-grade level. Here, appellant was enrolled as a sophomore in high school and doing well in school.

{¶ 27} Appellant also relies heavily on our decision in *State v. Pablo*, 10th Dist. No. 16AP-888, 2017-Ohio-8834, in support of his position that appellant did not knowingly and intelligently waive his *Miranda* rights. In *Pablo*, the juvenile was charged with three counts of rape, two counts of kidnapping, one count of gross sexual imposition, and one count of felonious assault originating out of two separate incidents. The juvenile filed a motion to suppress statements made to law enforcement during an interrogation, which the trial court granted. The state appealed, and we affirmed the trial court's ruling finding the juvenile in *Pablo* did not knowingly and intelligently waive his *Miranda* rights.

{¶ 28} While *Pablo* addressed similar issues of law, the facts in the case are distinguishable in several important ways. First, while the juvenile in *Pablo* was 16, the evidence suggested his level of intelligence was not high testifying he was a "D" student. *Id.* at ¶ 7. Next, while the juvenile in *Pablo* spoke English, his first and primary language was Spanish. Finally, the juvenile testified he believed he was required to sign the *Miranda* waiver. *Id.* Here, appellant testified he was enrolled in school and doing well. There is also no dispute that appellant's primary language was English and no testimony from appellant that he felt required to waive his *Miranda* rights. Considering all the above, we find appellant's argument to be without merit. Accordingly, we conclude appellant knowingly and intelligently waived his *Miranda* rights, and his statements to the police were admissible evidence.

{¶ 29} Appellant's first assignment of error is overruled.

**B. Appellant's Second Assignment of Error**

{¶ 30} In his second assignment of error, appellant argues the trial court erred in concluding there was sufficient evidence to find appellant delinquent for the offense of receiving stolen property. Appellant alleges appellee failed to establish that the vehicle appellant was driving was owned by the victim named in the complaint.

{¶ 31} Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support the verdict. *State v. Wright*, 10th Dist. No. 18AP-770, 2019-Ohio-5201, ¶ 16. "In a sufficiency of the evidence inquiry, appellate courts do not assess

whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction." *State v. Cook*, 10th Dist. No. 19AP-353, 2020-Ohio-2844, ¶ 19, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80. A reviewing court must not weigh witnesses' credibility but presume that the state's witnesses were honest and determine if their testimony demonstrates the necessary elements of the crime. *Wright* at ¶ 17, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. "In determining whether the evidence is legally sufficient to support the jury verdict as a matter of law, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds* as stated in *State v. Smith*, 80 Ohio St.3d 89, 102 (1997), fn. 4. We will not reverse a verdict based on insufficient evidence unless we find "reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430 (1997).

{¶ 32} Pursuant to R.C. 2913.51(A), the offense of receiving stolen property is defined as follows: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." R.C. 2913.01(D) defines "owner" as "any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful." The Committee Comment to R.C. 2913.01 provides additional clarification stating " '[o]wner' is defined so as to retain the concept that a thief can steal stolen property from a thief. * * * The gist of theft is a wrongful taking rather than a particular ownership, and it is sufficient that a thief knows that property or services are not his to take." R.C. 2913.01, 1974 Committee Comment to H 511.

{¶ 33} The crime of receiving stolen property is statutorily defined as a theft offense. *See* R.C.2913.01(K)(1) (a "[t]heft [o]ffense means any of the following * * * [a] violation of section * * * 2913.51"). When proving a theft offense, the inquiry is not whether the person from whom the property was stolen was the owner but "whether the accused had any lawful right to possess the property." *State v. Jeantine*, 10th Dist. No. 09AP-296, 2009-Ohio-

6775, ¶ 23, citing *State v. Rhodes*, 2 Ohio St.3d 74, 77 (1982) (finding title ownership is not an element of a theft offense); *see also State v. Mason*, 10th Dist. No. 91AP-1012 (July 14, 1992) (concluding while the name of the person from whom the property was stolen is usually named in the indictment, ownership is not an element of a theft offense).

{¶ 34} Accordingly, there is no requirement that appellee prove ownership of the stolen vehicle at issue for the purpose of demonstrating the offense of receiving stolen property. *State v. Edwards*, 9th Dist. No. 21705, 2004-Ohio-1595, ¶ 17 (finding ownership was not required to prove the offense of receiving stolen property). Appellee is only required to demonstrate that appellant was not the owner of the vehicle and that he received the vehicle when he knew or had reasonable cause to believe that the vehicle was obtained through the commission of a theft offense.[3] As such, appellant's argument that the evidence was insufficient based on appellee failing to present evidence of ownership is without merit.

{¶ 35} Based on the forgoing, appellant's second assignment of error is overruled.

## IV. CONCLUSION

{¶ 36} Having overruled appellant's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____

---

[3] Even if ownership was a required element of the offense, it appears there was sufficient evidence B.C. was the owner of the stolen vehicle.