[Cite as *In re R.C.*, 2026-Ohio-1244.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

IN RE:

    R.C.,

ADJUDGED JUVENILE TRAFFIC
OFFENDER.

CASE NO. 14-25-40

OPINION AND
JUDGMENT ENTRY

IN RE:

    R.G.,

ADJUDGED JUVENILE TRAFFIC
OFFENDER.

CASE NO. 14-25-41

OPINION AND
JUDGMENT ENTRY

Appeals from Union County Common Pleas Court
Juvenile Division
Trial Court Nos. 2025JB045 and 2025JB043

Judgments Affirmed

Date of Decision:  April 6, 2026

APPEARANCES:

    *G.Q. Buck Vaile* **for Appellants**

    *Brian C. Cook* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Adjudicated juvenile traffic offender-appellants, R.G. and R.C., appeal the September 24, 2025 judgment entries of disposition of the Union County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

{¶2} On March 11, 2025, complaints were filed against the juveniles. Both R.C. and R.G. were charged with reckless operation of a motor vehicle in violation of R.C. 4511.20, a minor misdemeanor if committed by an adult. R.C. was additionally charged with driving under financial responsibility law suspension or cancellation in violation of R.C. 4510.16, an unclassified misdemeanor if committed by an adult, and operating a motor vehicle with no temporary permit or without an adult present in violation R.C. 4507.05(F)(1), a minor misdemeanor if committed by an adult. R.C. and R.G. appeared in court on April 8 and April 14, 2025, respectively, and denied the charges in the complaints.

{¶3} In May 2025, R.G. and R.C. filed motions to suppress the statements they made to Corporal Morgan, which the State opposed. The cases proceeded to a consolidated suppression hearing on September 23, 2025. At the suppression hearing, Corporal Michael Morgan ("Corporal Morgan") of the Marysville Police Department testified that he initiated an investigation after receiving a bystander's video showing a black Honda Civic and a white Honda Accord street racing in Marysville. Corporal Morgan's investigation led him to an Express Lube, where he

located a black Honda Civic matching one of the vehicles in the footage. Corporal Morgan testified that, upon entering the business, he asked if the owner of the black Honda was present. R.G., an employee, indicated that the vehicle belonged to him. Corporal Morgan then asked R.G. to "step outside" to the parking lot to speak with him. (Sept. 23, 2025 Tr. at 54). The body camera footage—introduced as State's Exhibit 2—captures the interaction once they were outside. Corporal Morgan showed R.G. the bystander's video and asked if he was driving the black Honda during the incident, which R.G. then admitted. Likewise, during the video, Corporal Morgan can be heard telling R.G. that he "appreciate[s his] honesty" and that "[h]onesty goes a long way with him." (*Id.* at 35). Furthermore, during his questioning of R.G. outside of the business, two additional officers can be seen approaching while Corporal Morgan continued talking to R.G. Corporal Morgan and the other two officers were dressed in their police uniforms.

{¶4} Upon re-entering the business, Corporal Morgan asked, "Who drives a white car that was racing him earlier?" (*Id.* at 39). R.C. responded that he was the driver and admitted he had been "testing" the vehicle. (*Id.*). During this exchange, R.C. also admitted he was driving with an expired temporary permit and without a supervising adult.

{¶5} Corporal Morgan further testified that he did not read either juvenile their *Miranda* rights prior to questioning. When asked why, Morgan responded that he was "not investigating a criminal offense," he was "investigating a traffic

violation." (*Id.* at 57). He testified that, during questioning, the juveniles were free to leave because he "was still investigating the case" and that they were able to go back to work after he finished. (*Id.*). Following the consolidated suppression hearing, the trial court denied R.G.'s and R.C.'s motions to suppress.

{¶6} Thereafter, the trial court adjudicated R.G. and R.C. as juvenile traffic offenders, finding that both violated R.C. 4511.20 and that R.C. additionally violated R.C. 4507.05(F)(1). In dispositional entries filed on September 24, 2025, the trial court suspended R.G.'s and R.C.'s probationary driver's licenses and ordered them to pay court costs, fees, and a $50.00 fine for each charge.

{¶7} R.G. and R.C.filed their notices of appeal on October 16, 2025. They raise one assignment of error for our review.

**Assignment of Error**

**The Union County Juvenile Court erred in not suppressing the statements made by the appellants when they were questioned by Officer Morgan without the benefit of having first been given a Miranda warnitg [sic].**

{¶8} In their sole assignment of error, R.G. and R.C. argue that the trial court erred by denying their motions to suppress statements that they made to law enforcement. Specifically, they contend that they were deprived of their freedom of action in a significant way, rendering the encounter a custodial interrogation that required *Miranda* warnings prior to being questioned by Corporal Morgan. They

argue in the alternative that their statements were involuntarily induced because the police-dominated atmosphere overbore their wills.

*Standard of Review*

{¶9} Our review of a juvenile court's denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8; *In re A.P.*, 2018-Ohio-3423, ¶ 26 (12th Dist.). At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Burnside* at ¶ 8. *See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*

*Analysis*

{¶10} "The Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution ensure that no person shall be forced to be a witness against himself in a criminal proceeding." *In re A.S.*, 2020-Ohio-5490, ¶ 20 (10th Dist.). "In *Miranda*, the United States Supreme Court held that to protect against the inherent risk of coercion during a custodial interrogation, procedural safeguards are needed to ensure the defendant's right against self-incrimination." *Id.*, citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "'"Juveniles are entitled

both to protection against compulsory self-incrimination under the Fifth Amendment and to *Miranda* warnings where applicable.""" *In re J.S.*, 2016-Ohio-255, ¶ 10 (3d Dist.), quoting *In re K.W.*, 2009-Ohio-3152, ¶ 12 (3d Dist.), quoting *State v. Thompson*, 2001 Ohio App. LEXIS 269, *8 (7th Dist. Jan 24, 2001).

{¶11} "'[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.'" *Id.* at ¶ 11, quoting *Miranda* at 478. "'[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.'" *Id.*, quoting *Miranda* at 444. "'Police are not required to administer *Miranda* warnings to every person they question.'" *Id.*, quoting *In re R.S.*, 2014-Ohio-3543, ¶ 16 (3d Dist.). "Rather, a police officer is required to administer *Miranda* warnings only where the individual questioned is subject to 'custodial interrogation.'" *Id.*, quoting *In re R.S.* at ¶ 16.

{¶12} "A custodial interrogation is defined as '"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."'" *In re A.S.* at ¶ 20, quoting *In re D.B.*, 2018-Ohio-1247, ¶ 17 (10th Dist.), quoting *Miranda* at 444. "Accordingly, '[a] suspect in police custody "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used

against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.”’” *Id.*, quoting *State v. Lather*, 2006-Ohio-4477, ¶ 6, quoting *Miranda* at 479.

{¶13} “‘[T]o determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave.’” *Id.* at ¶ 12, quoting *State v. Hoffner*, 2004-Ohio-3430, ¶ 27. “‘The first inquiry is distinctly factual.’” *In re J.S.* at ¶ 12, quoting *In re R.S.* at ¶ 17. “‘Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve “the ultimate inquiry” of whether there was a “‘formal arrest or restraint on freedom of movement’ of the degree associated with a formal arrest.”’” *Id.*, quoting *Hoffner* at ¶ 27, quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Generally, “‘[t]he subjective views harbored by either the interrogating officers or the person being questioned are of no consequence in the *Miranda* analysis.’” *Id.*, quoting *In re R.S.* at ¶ 17. *See also In re S.W.*, 2022-Ohio-854, ¶ 23 (1st Dist.) (“Although a police officer’s intent may be relevant, the ultimate inquiry is whether the officer should have known that the

suspect 'would suddenly be moved to make a self-incriminating response.'"), quoting *Rhode Island v. Innis*, 446 U.S. 291, 303 (1980).

{¶14} To determine whether a reasonable person would have believed they were free to leave, this court has previously found the following factors relevant: (1) the location of the questioning, and whether it occurred in a comfortable, familiar environment rather than a restrictive one; (2) whether the defendant was a suspect when the interview began, though *Miranda* is not required simply because an investigation has focused on the individual; (3) whether the defendant's freedom to leave was restricted in any way; (4) whether the defendant was handcuffed or told they were under arrest; (5) whether threats were made during the interrogation; (6) whether the defendant was physically intimidated; (7) whether the police verbally dominated the interrogation; (8) the defendant's purpose for being at the location, such as whether they were there independently or brought there by police; (9) whether neutral parties were present during the questioning; and (10) whether police took any action to overpower, trick, or coerce the defendant into making a statement. *State v. Carter*, 2010-Ohio-5189, ¶ 23 (3d Dist.).

{¶15} Moreover, "'the United States Supreme Court held that a juvenile's age may be considered in the *Miranda* analysis, so long as the juvenile's age was known to the officer at the time of questioning or would have been objectively apparent to a reasonable officer.'" *In re J.S.* at ¶ 13, quoting *In re R.S.* at ¶ 18, citing *J.D.B. v. North Carolina*, 564 U.S. 261, 271-272 (2011). "'While a juvenile's age

may be considered in the *Miranda* custody analysis, the Supreme Court cautioned that "this does not mean that a child's age will be a determinative, or even a significant, factor in every case . . . .'"" *Id.*, quoting *In re R.S.* at ¶ 18, citing *J.D.B.* at syllabus.

{¶16} "An individual temporarily detained as part of a routine traffic or investigatory stop ordinarily is not 'in custody' and is not, therefore, entitled to *Miranda* warnings." *State v. Hambrick*, 2016-Ohio-3395, ¶ 16 (4th Dist.), quoting *State v. Farris*, 2006-Ohio-3255, ¶ 13, citing *Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984). "Thus, 'most traffic stops and accompanying investigatory questioning do not constitute custodial interrogations warranting the right to *Miranda* warnings.'" *Id.*, quoting *State v. Brocker*, 2015-Ohio-3412, ¶ 17 (11th Dist.). "However, during a traffic or investigative stop circumstances may change and render an individual 'in custody' for practical purposes and, thus, '"entitled to the full panoply of protections prescribed by *Miranda*."'" *Id.*, quoting *Farris* at ¶ 13, quoting *Berkemer* at 440.

{¶17} "'Separate from the issue of compliance with *Miranda* in custodial interrogations is the voluntariness of the pretrial statement.'" *In re J.S.* at ¶ 14, quoting *In re R.L.*, 2014-Ohio-5065, ¶ 21 (2d Dist.). "'Even where *Miranda* warnings are not required, "a confession may [still] be involuntary [and excludable] if on the totality of the circumstances, the defendant's will was overcome by the circumstances surrounding the giving of the confession."'" *Id.*, quoting *In re*

*N.J.M.*, 2010-Ohio-5526, ¶ 18 (12th Dist.), quoting *State v. Fille*, 2002-Ohio-3879, ¶ 15 (12th Dist.).

{¶18} When assessing whether a juvenile's pretrial statement was "involuntarily induced, a court must look at the totality of circumstances, which include, 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" *In re N.J.M.* at ¶ 19, quoting *State v. Frazier*, 2007-Ohio-5048, ¶ 112. "Also, juvenile courts must be aware that 'special caution' should be given to a review of a juvenile's pretrial statement, admission or confession." *Id.*, quoting *In re Gault*, 387 U.S. 1, 45 (1967). "Although arguably subsumed within the totality of circumstances analysis, a prerequisite to a finding of involuntariness is the presence of coercive police activity." *Id.* at ¶ 20. "Coercive law enforcement tactics may include, but are not limited to, physical abuse, threats, deprivation of food, medical treatment or sleep, use of certain psychological techniques, exertion of improper influences or direct or implied promises, and deceit." *Id.*

{¶19} In this case, the trial court denied R.G.'s and R.C.'s motions to suppress after determining that their encounters with law enforcement were not custodial interrogations. In particular, the trial court concluded that, because the questioning was brief, unrestrained, and occurred in the juveniles' workplace,

*Miranda* warnings were unnecessary and R.G.'s and R.C.'s statements were voluntary.

{¶20} On appeal, R.G. and R.C. challenge the trial court's denial of their motions to suppress, arguing that their respective encounters with law enforcement escalated into custodial interrogations. Specifically, the juveniles contend that they were deprived of their freedom of action in a significant way when Corporal Morgan isolated R.G. in the parking lot to confront him with video evidence, and subsequently surrounded R.C. inside the business with two additional uniformed officers to ask an inherently accusatory question. R.G. and R.C. contend that, given the totality of these circumstances and accounting for their ages as juveniles, a reasonable child would not have felt at liberty to terminate the interviews or leave the premises. Consequently, they assert that the failure to provide *Miranda* warnings renders their subsequent admissions inadmissible. Alternatively, R.G. and R.C. argue that, even if the encounters are deemed non-custodial, their statements must still be suppressed as involuntarily induced. They contend that the totality of the circumstances—particularly the coercive effect of the police-dominated atmosphere and their vulnerability as minors—overbore their wills.

{¶21} Based on our review of the record, we conclude that Corporal Morgan's questioning of R.G. and R.C. did not constitute a custodial interrogation. Critically, a review of the totality of the circumstances surrounding the encounters reflects that they did not take place in an environment which restricted their freedom

-11-

to depart. Specifically, the questioning occurred in a familiar place—the juveniles' place of employment. *See State v. Smith*, 1997 Ohio App. LEXIS 2426, *6 (10th Dist. Jun. 3, 1997) (concluding that questioning a suspect at their place of employment is generally not tantamount to a custodial interrogation because it lacks the inherently coercive nature of a police station).

{¶22} Furthermore, the duration of the questioning was exceedingly brief and lacked the physical restraints traditionally associated with a formal arrest. Indeed, Corporal Morgan did not draw his weapon, place R.G. or R.C. in handcuffs, or secure them in the back of a police cruiser. While we recognize that the presence of three uniformed officers and the targeted nature of Corporal Morgan's questions weigh slightly in favor of custody, these factors alone do not transform an investigatory encounter into a custodial interrogation. *See United States v. Saylor*, 705 Fed.Appx. 369, 375 (6th Cir. 2017) (noting that a noncustodial conversation is not transformed into a custodial interrogation simply because law enforcement confronted a suspect with evidence of their guilt); *Hambrick*, 2016-Ohio-3395, at ¶ 17 (4th Dist.) (explaining that an officer's subjective suspicion or unarticulated plan to investigate a specific offense has no bearing on whether a suspect is objectively in custody and does not automatically trigger *Miranda*).

{¶23} Importantly, the record contains no evidence that the officers physically blocked the juveniles' paths to exit, utilized deceptive interrogation tactics, or subjected them to any threats or physical deprivation. *See In re J.S.*, 2016-

Ohio-255, at ¶ 31 (3d Dist.) ("Aside from telling J.S. that they wanted the truth, Graff and the fire investigators did not threaten or coerce J.S."). Moreover, instead of a prolonged or coercive interrogation, the juveniles made their incriminating statements within the first few moments of the encounters in response to brief, investigatory questions. Finally, while R.G. and R.C. were 16 and 17 years old, their ages are not determinative of an unusual vulnerability to police questioning, as both were gainfully employed and entrusted to manage a commercial business without on-site supervision. Accordingly, we conclude that R.G. and R.C. were not subjected to a custodial interrogation, and law enforcement was not required to administer *Miranda* warnings prior to questioning them.

{¶24} Having determined that the encounters were non-custodial, we now turn to R.G. and R.C.'s alternative argument that their statements were nonetheless involuntarily induced. Applying the requisite "special caution" to our review of the juveniles' statements, we conclude that the record does not support the contention that their wills were overborne by the circumstances surrounding their confessions.

{¶25} Decisively, the record is devoid of any coercive police activity. As we previously addressed, Corporal Morgan and the assisting officers did not engage in physical abuse or threats, nor did they subject the juveniles to any physical deprivation of food, medical treatment, or sleep. Moreover, straightforward investigatory questioning—such as confronting R.G. with the bystander video, asking R.C. who drove the white Honda, and generally encouraging honesty—does

not amount to psychological manipulation, deceit, or an improper implied promise of leniency. *See In re N.J.M.*, 2010-Ohio-5526, at ¶ 24 (12th Dist.) (noting that general promises to help a defendant if they talk are not improper inducements so long as no specific promises are made).

{¶26} Furthermore, the remaining factors under the totality of the circumstances test weigh heavily in favor of voluntariness. The length and intensity of the questioning were minimal, the encounters took place in the familiar surroundings of the juveniles' own workplace, and their ages and mentality did not suggest an unusual vulnerability to police questioning. Therefore, given the brevity of the encounters, the familiar setting, the maturity level of the juveniles, and the complete absence of coercive law enforcement tactics, R.G.'s and R.C.'s pretrial statements were voluntary.

{¶27} Accordingly, we conclude that the trial court did not err by denying R.G.'s and R.C.'s motions to suppress.

{¶28} R.G. and R.C.'s assignment of error is overruled.

{¶29} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**WILLAMOWSKI and WALDICK, J.J., concur.**

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignment of error is overruled and it is the judgment and order of this Court that the judgments of the trial court are affirmed with costs assessed to Appellants for which judgment is hereby rendered. The causes are hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

_____
William R. Zimmerman, Judge

_____
John R. Willamowski, Judge

_____
Juergen A. Waldick, Judge

DATED:
/hls